## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| JOSHUA KAIMAN<br>6022 Deerfield Blvd, Unit 167<br>Mason, OH 45040 | )<br>)<br>)<br>) | CASE NO. 1:22-cv-00100<br><br>JUDGE SUSAN J. DLOTT |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| TELEDYNE INSTRUMENTS, INC.<br>d/b/a Teledyne Tekmar<br>c/o Evan T. Priestle, Esq.<br>Taft Stettinius & Hollister LLP<br>425 Walnut Street, Suite 1800<br>Cincinnati, OH 45202-3957<br>Email: epriestle@taftlaw.com | )<br>)<br>)<br>)<br>)<br>)<br>) | **FOR DAMAGES AND**<br>**INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |
| **-and-** | )<br>) | |
| CINDY LEICHTY<br>c/o Evan T. Priestle, Esq.<br>Taft Stettinius & Hollister LLP<br>425 Walnut Street, Suite 1800<br>Cincinnati, OH 45202-3957<br>Email: epriestle@taftlaw.com | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff Joshua Kaiman by and through undersigned counsel, as his First Amended Complaint against the Defendants, states and avers the following:

### PARTIES

1. Kaiman is a resident of the city of Mason, Warren County, Ohio.

2. Defendant TELEDYNE INSTRUMENTS, INC. d/b/a Teledyne Tekmar ("Teledyne") is a foreign-incorporated, for-profit company that conducts business throughout the state of Ohio. The relevant location of the events and omissions of this First Amended Complaint took place was 4736 Socialville-Fosters Road, Mason, Ohio 45040.

3. Teledyne is, and was at all times hereinafter mentioned, Kaiman's employer within the meaning of the Americans of Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101, the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. 634, R.C. § 4113.52, and R.C. §4112 *et seq*.

4. Upon information and belief, Defendant CINDY LEICHTY is a resident of Ohio.

5. Defendant Leichty is, and was at all times hereinafter mentioned, an owner, manager, supervisor, and/or agent of Teledyne, and as such, an employer within the meaning of the Americans of Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101, the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. § 634, R.C. § 4113.52, and R.C. §4112 *et seq*.

**JURISDICTION & VENUE**

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Kaiman is alleging federal law claims under the ADEA and the ADA.

7. This Court has supplemental jurisdiction over Kaiman's state law claims pursuant to 28 U.S.C. § 1367, as Kaiman's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the adverse employment actions described herein, Kaiman filed a Charge of Discrimination with the Equal Employment Opportunity Commissions ("EEOC"), Charge No. 473-2021-01406 ("EEOC Charge").

10. On February 8, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Kaiman regarding the EEOC Charge.

11. Kaiman received the Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

12. Kaiman has filed this Amended Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

13. Kaiman has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Kaiman is a former employee of Teledyne.

15. At all times noted herein, Kaiman was qualified for his position with Teledyne.

16. At all times noted herein, Kaiman could fully perform the essential functions of his job, with or without a reasonable accommodation.

17. Kaiman has hearing loss and is therefore in a protected class for his disabilities.

18. Kaiman worked for Teledyne as a Commodity Manager from June 1, 2021, until Teledyne wrongfully terminated Kaiman's employment on or about August 4, 2021.

19. During the interview process, Kaiman disclosed that he was a disabled veteran.

20. Kaiman specifically noted that he has 52% hearing loss in his right ear and 62% hearing loss in his left ear.

21. Teledyne acknowledge Kaiman's disclosure and assured him that his disability would not be a problem.

22. In anticipation for his employment to start, Kaiman sent an email to HR Director, Defendant Cindy Leichty, on or around May 18, 2021.

23. This email again explained Kaiman's disability, and further asked for a reasonable accommodation including, but not limited to, a special type of headset for phones.

24. This headset was particularly important to Kaiman's work because everyone he worked with worked remotely and communicated exclusively through electronic means.

25. Kaiman never received a reply from Leichty.

26. On or around June 1, 2021, Kaiman officially started his job with Teledyne, and still did not have any accommodations for his hearing loss.

27. Kaiman struggled greatly due to Teledyne's failure to engage in the interactive process of finding him a reasonable accommodation, like his headset.

28. Kaiman called Commodity Team Leader Defendant Venkat Narayanan, to again request the special headset.

29. Instead of helping Kaiman, Narayanan accused Kaiman of being lazy and told him that he was just using his disability as an excuse not to listen. This was explicit disability discrimination against Plaintiff.

30. During this call, Kaiman was forced to ask Narayanan to speak up many times, but Narayanan simply continued to mock Kaiman and accuse him of making excuses not to listen or work. This was additional explicit disability discrimination against Plaintiff.

31. At one point during this conversation, Narayanan even mocked Kaiman for his request for time off work to handle his wife's chemotherapy treatments, stating that he was lazy and using this excuse not to carry out his duties to attend a business trip with Narayanan. This was explicit disability discrimination against Plaintiff's wife.

32. Kaiman thought Narayanan's statements were discriminatory and offensive.

33. Kaiman reported Narayanan's statements and conduct to Leichty in HR on or around June 20, 2021. This was a protected complaint of disability discrimination.

34. HR contacted Kaiman and told him that they would conduct an investigation into his reports.

35. Kaiman never heard back from HR regarding this matter.

36. Kaiman ended up purchasing his own special headset on or around June 25, 2021.

37. On or around June 3, 2021, Purchasing Manager for Teledyne's Omaha, Nebraska office, Lori Lepin, reached out to Kaiman and asked to speak with him.

38. Kaiman and Lepin agreed to talk on June 19, 2021.

39. On or around June 19, 2021, Lepin told Kaiman about a contract that Teledyne had executed with a company called SMTC Corporation ("SMTC").

40. Lepin said that SMTC was owned and operated by a Canadian Group, and that after signing a contract with Teledyne, someone at Teledyne had agreed to change the freight terms of the contract so that Teledyne paid for shipping to China and changed the contract price giving SMTC more money than was originally negotiated.

41. Lepin told Kaiman that SMTC produced printed circuit board assemblies ("PCBA"), in Dongguan, China for Teledyne while also serving a number of leading Chinese telecommunication companies.

42. Teledyne is a federal contractor of electronic devices that contain PCBAs produced by SMTC.

43. On or around July 14, 2020, Lepin advised Kaiman that the Federal Acquisition Regulatory ("FAR") Counsel published an interim rule, § 889(a)(1)(B), in the Federal Register, implementing restrictions aimed at preventing telecommunications and surveillance technologies manufactured by leading Chinese companies from playing any role in the federal supply chain.

44. Lepin told Kaiman that Teledyne had expressly violated this FAR regulation when they executed a Corporate Supply Agreement with SMTC because of SMTC's ongoing business dealings with several US-barred Chinese telecommunication companies, while forcing Teledyne to incur price increases, Chinese export duties, and import tariffs implemented by the Trump administration.

45. Lepin went on to advise Kaiman that these significant cost increases had been passed along to the US Government agencies Teledyne supports because it can't support its profit margins otherwise.

46. Kaiman and Lepin reasonably believed this to be an illegal action on Teledyne's behalf as it went against FAR § 889(a)(1)(B) barring a federal contractor's business dealings with any supplier who supports US-barred Chinese telecommunications companies as passed under the Trump administration and continued under the Biden administration.

47. Lepin told Kaiman that she tried to alert her supervisor, Scott Povich about this situation multiple times before Kaiman joined Teledyne, but to no avail.

48. Lepin was reaching out to Kaiman to have a commodity manager help resolve the issue.

49. After talking about the situation with Kaiman, Lepin was criticized by Povich for creating a baseless claim against Teledyne, and later precipitated her abrupt resignation from Teledyne on August 11, 2021, after learning of Kaiman's termination.

50. Kaiman attempted to discuss the situation with the Global Director of Supply Chain Management for Teledyne, Ken Hoganson, because Hoganson helped lead the SMTC contract negotiations.

51. Hoganson told Kaiman to mind his own business.

52. At this point, Kaiman made a written, protected whistleblower complaint to Narayanan about Lepin's concerns.

53. Narayanan told Kaiman that this was an ethics matter and that it would need to be escalated to HR.

54. Kaiman escalated the complaint to Leichty in HR, but to the best of Kaiman's knowledge and belief, the situation was never addressed or resolved.

55. On or around July 13, 2021, Kaiman emailed Leichty and Narayanan to reiterate his disability, how Teledyne had denied him a reasonable accommodation, and how this failure was affecting his ability to get work done in a timely manner.

56. Kaiman concluded his email by asking for some guidance and assistance so that he could perform his job to the best of his capabilities. This email was a protected action.

57. On or around August 4, 2021, shortly after Kaiman sent the email to Leichty and Narayanan, his employment was suddenly terminated.

58. In his termination paperwork, Teledyne acknowledged Kaiman's disability discrimination complaints and his ethics complaints.

59. Teledyne's purported reason(s) for Kaiman's employment termination was clearly pretextual.

60. Teledyne actually terminated Kaiman's employment discriminatorily against his disability and/or in retaliation against his protected whistleblower complaints.

61. As a result of the above, Kaiman has suffered and will continue to suffer damages.

**COUNT I: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52**
**(Defendant Teledyne Only)**

62. Kaiman restates each and every prior paragraph of this First Amended Complaint, as if it were fully restated herein.

63. On or around June 20, 2021, Kaiman made a protected whistleblower complaint to Narayanan regarding discrepancies in a contract between Teledyne and SMTC, and the impact the contract had on the operations of Teledyne including, but not limited to, excessive cost incurrences and FAR violations.

64. Narayanan responded telling Kaiman that this was an ethics question and that he should escalate the complaint to Leichty in HR.

65. Kaiman escalated the complaint to Leichty in HR, but to the best of Kaiman's knowledge and belief, the situation was never addressed or resolved.

66. Shortly after making this complaint, Kaiman's employment was suddenly terminated on or around August 4, 2021.

67. During his termination meeting, Kaiman's ethics complaints were brought up, but against never addressed.

68. Kaiman verbally complained to Teledyne regarding this concern.

69. Kaiman complained to Teledyne in writing regarding this concern.

70. Kaiman gave Teledyne an opportunity to address this concern.

71. Teledyne retaliated against Kaiman by terminating his employment based on his complaints regarding this concern.

72. Teledyne's termination of Kaiman was in violation of R.C. § 4113.52.

73. As a direct and proximate result of Teledyne's acts and omissions, Kaiman has suffered and will continue to suffer damages.

**COUNT II: AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq.***

**(Defendant Teledyne Only)**

74. Kaiman restates each and every prior paragraph of this First Amended Complaint, as if it were fully restated herein.

75. Kaiman is 62 years old, and thus is in a protected class for his age.

76. R.C. § 4112 *et seq*., provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

77. Teledyne treated Kaiman differently than other similarly situated employees based upon his age.

78. Teledyne's termination of Kaiman was an adverse employment action against him.

79. Teledyne actually terminated Kaiman's employment due to his age.

80. Teledyne violated R.C. 4112 *et seq*., by terminating Kaiman's employment because of his age.

81. Teledyne violated R.C. § 4112 *et seq*., by treating Kaiman differently from other similarly situated employees outside his protected class.

82. Teledyne violated R.C. § 4112 *et seq*., by applying its employment policies in a disparate manner based on Kaiman's age.

83. Teledyne violated R.C. § 4112 *et seq*., by applying is disciplinary policies in a disparate manner based on Kaiman's age.

84. Kaiman incurred emotional distress damages as a result of Teledyne's conduct described herein.

85. As a direct and proximate result of Defendant's acts and omissions, Kaiman has suffered and will continue to suffer damages.

**COUNT III: AGE DISCRIMINATION IN VIOLATION OF THE ADEA**

**(Defendant Teledyne Only)**

86. Kaiman restates each and every prior paragraph of this First Amended Complaint, as if it were fully restated herein.

87. Kaiman is 62 years old, and thus is in a protected class for his age.

88. The ADEA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

89. Teledyne treated Kaiman differently than other similarly situated employees based upon his age.

90. Teledyne's termination of Kaiman was an adverse employment action against him.

91. Teledyne actually terminated Kaiman's employment due to his age.

92. Teledyne violated the ADEA by terminating Kaiman's employment because of his age.

93. Teledyne violated the ADEA by treating Kaiman differently from other similarly situated employees outside his protected class.

94. Teledyne violated the ADEA by applying its employment policies in a disparate manner based on Kaiman's age.

95. Teledyne violated the ADEA by applying is disciplinary policies in a disparate manner based on Kaiman's age.

96. Kaiman incurred emotional distress damages as a result of Teledyne's conduct described herein.

97. As a direct and proximate result of Teledyne's acts and omissions, Kaiman has suffered and will continue to suffer damages.

**COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq*.**

**(Defendant Teledyne Only)**

98. Kaiman restates each and every prior paragraph of this First Amended Complaint, as if it were fully restated herein.

99. Kaiman has 52% hearing loss in his rights ear and 62% hearing loss in his left ear, and thus is in a protected class for his disability.

100. Kaiman disclosed that he is a disabled veteran in his initial interview with Teledyne.

101. Therefore, Teledyne had notice of Kaiman's disability.

102. R.C. § 4112 *et seq.*, provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disabilities and/or perceived disabilities.

103. Teledyne treated Kaiman differently than other similarly situated employees based upon his age.

104. Teledyne's termination of Kaiman was an adverse employment action against him.

105. Teledyne actually terminated Kaiman's employment due to his disabilities.

106. Alternatively, Teledyne actually terminated Kaiman's employment due to his perceived disabilities.

107. Teledyne violated R.C. §4112 *et seq.*, by terminating Kaiman's employment because of his disabilities.

108. Alternatively, Teledyne violated R.C. § 4112 *et seq.*, by terminating Kaiman's employment because of his perceived disabilities.

109. Teledyne violated R.C. § 4112 *et seq.*, by treating Kaiman differently from other similarly situated employees outside his protected class.

110. Teledyne violated R.C. § 4112 *et seq.*, by applying its employment policies in a disparate manner based on Kaiman's disabilities.

111. Alternatively, Teledyne violated R.C. § 4112 *et seq.*, by applying its employment policies in a disparate manner based on Kaiman's perceived disabilities.

112. Teledyne violated R.C. § 4112 *et seq.*, by applying is disciplinary policies in a disparate manner based on Kaiman's disabilities.

113. Alternatively, Teledyne violated R.C. § 4112 *et seq.*, by applying is disciplinary policies in a disparate manner based on Kaiman's perceived disabilities.

114. Kaiman incurred emotional distress damages as a result of Teledyne's conduct described herein.

115. As a direct and proximate result of Teledyne's acts and omissions, Kaiman has suffered and will continue to suffer damages.

## COUNT V: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (Defendant Teledyne Only)

116. Kaiman restates each and every prior paragraph of this First Amended Complaint, as if it were fully restated herein.

117. Kaiman has 52% hearing loss in his rights ear and 62% hearing loss in his left ear, and thus is in a protected class for his disability.

118. Kaiman disclosed that he is a disabled veteran in his initial interview with Teledyne.

119. Therefore, Defendant Teledyne had notice of Kaiman's disability.

120. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disabilities and/or perceived disabilities.

121. Defendant Teledyne treated Kaiman differently than other similarly situated employees based upon his age.

122. Defendant Teledyne's termination of Kaiman was an adverse employment action against him.

123. Defendant Teledyne actually terminated Kaiman's employment due to his disabilities.

124. Alternatively, Defendant Teledyne actually terminated Kaiman's employment due to his perceived disabilities.

125. Defendant Teledyne violated the ADA by terminating Kaiman's employment because of his disabilities.

126. Alternatively, Defendant Teledyne violated the ADA by terminating Kaiman's employment because of his perceived disabilities.

127. Defendant Teledyne violated the ADA by treating Kaiman differently from other similarly situated employees outside his protected class.

128. Defendant Teledyne violated the ADA by applying its employment policies in a disparate manner based on Kaiman's disabilities.

129. Alternatively, Teledyne violated the ADA by applying its employment policies in a disparate manner based on Kaiman's perceived disabilities.

130. Defendant Teledyne violated the ADA by applying is disciplinary policies in a disparate manner based on Kaiman's disabilities.

131. Alternatively, Defendant Teledyne violated the ADA by applying is disciplinary policies in a disparate manner based on Kaiman's perceived disabilities.

132. Kaiman incurred emotional distress damages as a result of Defendant Teledyne's conduct described herein.

133. As a direct and proximate result of Defendant's acts and omissions, Kaiman has suffered and will continue to suffer damages.

## COUNT VI: FAILURE TO ACCOMMODATE
### (Defendant Teledyne Only)

134. Kaiman restates each and every prior paragraph of this First Amended Complaint, as if it were fully restated herein.

135. Kaiman gave Teledyne notice of his disabling condition(s).

136. Kaiman requested accommodations from Teledyne (including, but not limited to, a special type of headset for phones) to assist with his disabilities.

137. Kaiman's requested accommodations were reasonable.

138. There was an available accommodation that would have been effective and would have not posed an undue hardship to Teledyne.

139. Teledyne failed to engage in the interactive process of determining whether Kaiman needed an accommodation.

140. Teledyne failed to provide an accommodation.

141. Teledyne violated R.C. § 4112 *et seq.*, by failing to engage Kaiman in the interactive process.

142. Teledyne violated R.C. § 4112 *et seq.*, by failing to provide Kaiman with reasonable accommodation.

143. As a direct and proximate result of Teledyne's conduct, Kaiman suffered and will continue to suffer damages.

## COUNT VII: RETALIATION

144. Kaiman restates each and every prior paragraph of this First Amended Complaint, as if it were fully restated herein.

145. As a result of Defendant's discriminatory conduct described herein, Kaiman complained of the discrimination and failure to accommodate he was experiencing.

146. Subsequent to Kaiman's complaints, Defendants took adverse employment actions against Kaiman, including but not limited to, terminating his employment.

147. Pursuant to R.C. § 4112 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person had opposed any unlawful discriminatory practice.

148. Teledyne violated R.C. § 4112 *et seq.*, by terminating Kaiman's employment in retaliation for his protected complaints.

149. Pursuant to R.C. § 4112.02(J), it is an unlawful for any person to "aid, abet, incite, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice. . ."

150. Leichty violated R.C. § 4112.02(J) by aiding, abetting, inciting, and/or coercing Kaiman's unlawful terminating in retaliation for his protected complaints.

151. As a direct and proximate result of Defendant's retaliatory discriminatory against and discharge of Kaiman, he has suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Kaiman demands from Defendants the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Kaiman's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Kaiman for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Kaiman's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)
    Trial Attorney
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Joshua Kaiman*

# JURY DEMAND

Plaintiff Joshua Kaiman demands a trial by jury by the maximum number of jurors permitted.

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)