IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Joshua Kaiman, | : | Case No. 1:22-cv-100 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **Order Granting in Part and Denying** |
| Teledyne Instruments, Inc., *et al.*, | : | **in Part Motion to Dismiss** |
| | : | |
| Defendants. | : | |
| | : | |

This matter is before the Court on Defendants's Motion to Dismiss the Amended Complaint. (Doc. 7.) Plaintiff has filed a Response in Opposition, and Defendants have filed a Reply. (Docs. 9, 10.) For the reasons that follow, Defendants's Motion will be **GRANTED IN PART and DENIED IN PART**.

**I.    BACKGROUND**

   **A. Facts**

As alleged in the Amended Complaint, Defendant Teledyne Instruments, Inc. ("Teledyne") is a federal contractor of electronic devices that contain printed circuit board assemblies ("PCBAs"). (Doc. 5 at PageID 53.) Defendant Cindy Leichty is Teledyne's human resources director. (*Id*. at PageID 51.) Plaintiff Joshua Kaiman was employed by Teledyne as a commodity manager from June 1, 2021 to August 4, 2021. (*Id*.) Kaiman alleges he is 62 years old and has a 52% hearing loss in his right ear and 62% hearing loss in his left ear. (*Id*. at PageID 51, 57.) While interviewing for the position, Kaiman informed Teledyne of his hearing loss, to which Teledyne responded by stating it did not consider his condition to be an issue. (*Id*. at PageID 51.) Prior to beginning his employment, Kaiman emailed Leichty to request a special

type of headset because the individuals he would be working with worked remotely and communicated exclusively through electronic means. (*Id*. at PageID 51–52.) Kaiman claims he never received a response to his email and had not received a special headset when he began his employment on June 1, 2021. (*Id*. at PageID 52.)

After Kaiman began his employment, he called Venkat Narayanan, the team leader for Kaiman's department, to again request a special headset. (*Id*.) Kaiman alleges Narayanan called him lazy and accused him of using his hearing loss as an excuse not to listen or work, and also mocked him for asking Narayanan to speak up during the call. (*Id*.) Kaiman reported Narayanan's behavior to Leichty on June 20, 2021, who indicated the matter would be investigated. (*Id*. at PageID 52–53.) Kaiman claims he did not receive any further information regarding this matter, and he ultimately purchased a special headset on June 25, 2021. (*Id*. at PageID 53.) He again contacted Leichty and Narayanan on July 13, 2021 to reiterate his hearing loss and request guidance and assistance. (*Id*. at PageID 55.)

On or around June 19, 2021, Lori Lepin, the purchasing manager for Teledyne's Omaha, Nebraska office, contacted Kaiman for help to resolve a perceived issue regarding a contract between Teledyne and SMTC Corporation ("SMTC"), a company owned and operated by a Canadian group. (*Id*. at PageID 53–54.) Lepin informed Kaiman that SMTC produced PCBAs in China and also served several Chinese telecommunication corporations. (*Id*. at PageID 53.)

On or around July 14, 2021, Lepin notified Kaiman that Federal Acquisition Regulatory Counsel published an interim rule, Federal Acquisition Regulation section 889(a)(1)(B),[1] aimed

---

[1] Kaiman indicates the interim rule has been codified in 48 C.F.R. § 4.21. By way of background, the Federal Acquisition Regulations System was "established for the codification and publication of uniform policies and procedures for acquisition by all executive agencies." 48 C.F.R. § 1.101. The system "consists of the Federal Acquisition Regulation (FAR), which is the primary document, and agency acquisition regulations that implement or supplement the FAR." *Id*.

toward preventing telecommunications and surveillance technologies manufactured by Chinese companies from entering the federal supply chain. (*Id*.) Lepin further advised Kaiman that she believed Teledyne violated this regulation by contracting with SMTC due to SMTC's on-going business with several Chinese telecommunication companies that were barred from business dealings in the United States, and she had tried to alert her supervisor to the issue. (*Id*. at PageID 54.)

Thereafter, Kaiman attempted to discuss the SMTC contract with Ken Hoganson, Teledyne's global director of supply chain management, who allegedly responded by telling Kaiman to mind his own business. (*Id*. at PageID 54.) Kaiman then made a written complaint voicing Lepin's concerns to Narayanan, who told him the matter needed to be addressed to human resources. (*Id*. at PageID 55.) Kaiman then lodged his complaint with Leichty and believes the matter was never addressed or resolved. (*Id*.) Teledyne ultimately terminated Kaiman's employment on August 4, 2021. (*Id*.)

**B. Procedural Posture**

Kaiman filed this employment discrimination action in Ohio state court in January 2022, and Teledyne removed the action to federal court on February 24, 2022. (Doc. 1.) The Amended Complaint asserts six claims against Teledyne: (1) violation of the Ohio Whistleblower Protection Act, Ohio Revised Code § 4113.52; (2) age discrimination in violation of Ohio Revised Code § 4112 *et seq*.; (3) age discrimination in violation of the Age Discrimination in Employment Act of 1997 ("ADEA"); (4) disability discrimination in violation of Ohio Revised Code § 4112 *et seq*.; (5) disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"); and (6) failure to accommodate in violation of Ohio

Revised Code § 4112 *et seq.* The Amended Complaint also asserts a claim of unlawful retaliation in violation of Ohio Revised Code § 4112 *et seq.* against both Teledyne and Leichty.

Defendants filed their Motion to Dismiss on March 10, 2022, arguing the Amended Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 7.) Kaiman filed a Response in Opposition, to which Defendants filed a Reply. (Docs. 9, 10.) This matter is now ripe for the Court's review.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted). However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570. A district court examining the

sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–79; *DiGeronimo Aggregates*, 763 F.3d at 509.

## III. LAW AND ANALYSIS

### A. Count I: Ohio Whistleblower Protection Act

The Ohio Whistleblower Protection Act ("OWPA") "prohibits an employer from retaliating against an employee who reports the employer's wrongdoing." *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 286 F. App'x 256, 261 (6th Cir. 2008) (citing Ohio Rev. Code § 4113.52). To prove a violation, a plaintiff must make a prima facie case by showing that (1) he engaged in an activity which would bring him under the protection of the statute; (2) he was subject to an adverse employment action; and (3) there was a causal link between the activity and the adverse employment action. *Klepsky v. United Parcel Serv., Inc.*, 489 F.3d 264, 271 (6th Cir. 2007) (citing *Woods v. Dorcas*, 142 Ohio App. 3d 783, 757 N.E.2d 17, 23 (2001)).

Defendants aver Count I must be dismissed because the Amended Complaint does not contain the essential allegations required to plead a violation of the statute. Specifically, Defendants argue Kaiman fails to allege he complied with the OWPA's procedural reporting requirements.[2] The statute provides:

> If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a

---

[2] Defendants also offer two alternative arguments as to why Count I should be dismissed. First, Defendants contend Kaiman does not allege he reported a violation that was (1) "a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety," (2) "a felony," or (3) "an improper solicitation for a contribution." Ohio Rev. Code § 4113.52(A)(1)(a); *see Dobrski v. Ford Motor Co.*, No. 1:09-CV-0963, 2013 WL 1303790, at *9 (N.D. Ohio Jan. 18, 2013). Second, Defendants argue the OWPA is inapplicable to alleged violations of a federal regulation, as the statutory text refers to "a violation of any state or federal statute or any ordinance or regulation of a political subdivision." Ohio Rev. Code § 4113.52(A)(1)(a). The Court finds it unnecessary to address these alternative arguments as it finds Kaiman fails to allege he strictly complied with the OWPA's reporting requirements.

5

> political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

Ohio Rev. Code § 4113.52(A)(1)(a). Ohio courts have narrowly interpreted the public policy expressed by the OWPA. "[I]n order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute." *Contreras v. Ferro Corp.*, 73 Ohio St. 3d 244, 652 N.E.2d 940, 946 (1995); *see also Argyriou v. David A. Flynn, Inc.*, No. 4:19-cv-1878, 2021 WL 766865, at *7 (N.D. Ohio Feb. 26, 2021) ("Ohio courts have interpreted the public policy expressed by the Whistleblower Act narrowly, requiring that employees comply with the statute's reporting and procedural requirements before they are permitted to make a wrongful termination claim under the statute) (citation and quotations omitted).

The Court finds dismissal of Count I is warranted due to failure to allege compliance with the statute's reporting requirements. The statute provides that "the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report." Ohio Rev. Code § 4113.52(A)(1)(a). Kaiman alleges he "attempted to discuss" the situation with Hoganson and made a written complaint to Narayanan. (Doc. 5 at PageID 54.) The oral and written reports, however, were not made to the *same* individual as required by statute. *See Holland v. Mercy Health*, No. 3:18CV490, 2018 WL 6041359, at *12 (N.D. Ohio Nov. 19, 2018)

6

(concluding plaintiff failed to strictly comply with the OWPA where plaintiff made an oral complaint to one supervisor and submitted a written report to a different supervisor); *Haney v. Chrysler Corp.*, 121 Ohio App. 3d 137, 699 N.E.2d 121, 122 (1997) (same). Kaiman argues he sufficiently alleges he made both an oral and written report to Narayanan, as he alleges that "Narayanan told Kaiman that this was an ethics matter and that it would need to be escalated to [human resources]." (*Id*. at PageID 55.) Even if this allegation sufficiently demonstrates Kaiman orally reported the alleged violation to Narayanan, this conversation occurred *after* Kaiman filed the written complaint with Narayanan. And the statute is clear that an oral report must be made *before* a written report is filed. Ohio Rev. Code § 4113.52(A)(1)(A) ("[T]he employee orally shall notify . . . and subsequently shall file . . . a written report."); *see Keehan v. Certech, Inc.*, No. 5:15-cv-1236, 2015 WL 8483179, at *3 (N.D. Ohio Dec. 10, 2015) (stating the procedure for an employee to follow under Ohio Revised Code § 4113.52(A) "begins with oral notification of the employee's supervisor, followed by a written report"). Thus, Kaiman fails to allege he strictly complied with the statute's reporting requirements by providing oral and written notice, in that order, to the same supervisor, and therefore is not entitled to protection under the OWPA.

As Kaiman failed to plead essential elements of an OWPA claim, Defendants's Motion to Dismiss is granted as to Count I.

**B. Counts II and III: Age Discrimination**

Next, the Amended Complaint asserts claims of age discrimination in violation of Ohio law and the ADEA. "Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998). Thus, the Court will analyze Kaiman's state and federal

claims in tandem. To establish a prima facie case of age discrimination, a plaintiff must show "(1) that [he] was over 40 years old; (2) [he] suffered an adverse employment action; (3) [he] was qualified for the position [he] held; and (4) [he] was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *Smith v. Wrigley Manuf. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (quoting *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015).

Defendants argue Kaiman failed to plead sufficient factual matter to establish an inference of age discrimination. *See Smith*, 749 F. App'x at 448–49; *House*, 630 F. App'x at 462–64. The Court disagrees. Kaiman alleges he is 62 years old, he was qualified for his position, he was fired because of his age, and Teledyne treated him differently from similarly-situated employees outside his protected class. (Doc. 5 at PageID 51, 57.) Although rather terse, at this early stage these allegations, viewed in a light most favorable to Kaiman and taken as true, are sufficient to state a claim for age discrimination. Defendants's Motion is denied as to Counts II and III.

### C. Counts IV and V: Disability Discrimination

Similar to age discrimination claims, "Ohio's disability-discrimination statute and the ADA employ the same analysis." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007). To establish a prima facie case of disability discrimination, a plaintiff must show "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Hedrick v. Western Res. Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004) (quoting *Monette v. Elec. Data Sys. Corp.*, 90

F.3d 1173, 1186 (6th Cir. 1996), *abrogated on other grounds*, *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) (en banc)).

Defendants argue that the Amended Complaint is devoid of any factual allegations that make it plausible Kaiman was terminated for a disability. *See Sam Han v. University of Dayton*, 541 F. App'x 622, 626–27 (6th Cir. 2013). The Court is not persuaded by Defendants's cited authority, as the allegations in this case are more robust and therefore distinguishable from those in *Sam Han*. Kaiman alleges he has a 52% hearing loss in his right ear and 62% hearing loss in his left ear, he disclosed this information during his interview process, he repeatedly requested a special headset to assist his hearing, he was terminated because of his disability, and he was treated differently from employees outside his protected class. (Doc. 5 at PageID 59.) He also alleges that during a call with Narayanan, Narayanan mocked him for asking Narayanan to speak up and accused him of making excuses not to listen or work. (*Id*. at PageID 52.) Unlike the plaintiff in *Sam Han*, Kaiman's allegations are more than bare and conclusory assertions. Defendants's Motion to Dismiss is therefore denied as to Counts IV and V.

### D. Count VI: Failure to Accommodate

Count VI alleges Teledyne failed to accommodate Kaiman's disability in violation of Ohio law. To establish a prima facie case for failure to accommodate, a plaintiff must show: "(1) [he] is disabled within the meaning of the [ADA];[3] (2) [he] is otherwise qualified for the position (with or without reasonable accommodation); (3) [his] employer knew or had reason to know about [his] disability; (4) [he] requested an accommodation; and (5) the employer failed to

---

[3] Although the Amended Complaint only asserts a failure to accommodate claim under Ohio law, Ohio courts often rely on federal case law interpreting the ADA because Ohio's state-law parallel was modeled after the ADA. *Pflanz v. Cincinnati*, 149 Ohio App. 3d 743, 778 N.E.2d 1073, 1080 (2002).

provide the necessary accommodation." *Stewart v. Bear Mgmt., Inc.*, 98 N.E.3d 900, 905 (Ct. App. 2017).

Kaiman has sufficiently pled a failure to accommodate claim. He alleges he suffers from hearing loss, gave Teledyne notice of his disability, requested an accommodation in the form of a special headset, and he purchased such a headset after Teledyne failed to provide one. (Doc. 5 at PageID 62.) The Court rejects Defendants's contention that these are mere conclusory allegations insufficient to state a claim, and therefore denies Defendants's Motion as to Count VI.

### E. Count VII: Retaliation

In order to establish a retaliation claim under Ohio law, a plaintiff must demonstrate "(1) [he] engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the [plaintiff], and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 116 Ohio St. 3d 324, 879 N.E.2d 174, 180 (2007).

The allegations regarding Kaiman's retaliation claim are sufficient to withstand Defendants's Motion to Dismiss. Kaiman alleges Narayanan mocked him for his hearing loss, and he reported Narayanan's behavior to Leichty on or around June 20, 2021. (Doc. 5 at PageID 52.) He further alleges that on or around July 13, 2021, he sent an email to Leichty and Narayanan reiterating that he suffers from hearing loss and how he had been denied an accommodation in the form of a special headset. (*Id*. at PageID 55.) Lastly, he alleges Teledyne acknowledged his discrimination complaints in his termination paperwork. (*Id*.) Taken as true, these allegations are sufficient to establish a plausible claim for retaliation, and Defendants's Motion is therefore denied as to Count VII.

## IV. CONCLUSION

For the reasons set forth herein, Defendants's Motion to Dismiss the Amended Complaint (Doc. 7) is **GRANTED** as to Count I and **DENIED** as to Counts II, III, IV, V, VI, and VII.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court
